UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

RAUL J.O.,[1]

          Petitioner,

       v.

WARDEN,

          Respondent.

No. 1:26-cv-03593-TLN-CKD

A # 240-744-324

**ORDER**

This matter is before the Court on Petitioner Raul J.O.'s ("Petitioner") Petition for Writ of Habeas Corpus. (ECF No. 1.) Respondent filed an opposition. (ECF No. 8.) For the reasons set forth below, Petitioner's habeas petition is GRANTED. (ECF No. 1.)

///

///

///

///

---

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits Petitioner's full name, using only his first name and last initial, to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

1

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The instant action arises from *pro se* Petitioner's allegedly unlawful detention.[2]  (*See* ECF No. 1.)  The facts in the petition are sparse.  Petitioner states he crossed the border on June 13, 2022, where he was arrested and processed by U.S. Customs and Border Patrol ("CBP") under Petition I-220A.  (*Id.* at 5.)  Petitioner was then released on his own recognizance.  (ECF No. 8-3 at 2.)  After his release, Petitioner applied for political asylum, was approved for a work permit (which is valid until 2028), and obtained his driver's license and Social Security number.  (ECF No. 1 at 5–6.)

On March 21, 2026, Petitioner was encountered by Florida Highway Patrol pursuant to a traffic stop.  (ECF No. 8-4 at 2.)  Petitioner was then taken into the custody of U.S. Immigration and Customs Enforcement ("ICE").  (*Id.*)  Petitioner has no criminal history.  (*Id.*)

Petitioner filed a habeas petition in *Ortega v. Mordant*, No. 2:26-cv-00898-SPC-NPM (M.D. Fl.), challenging his detention as violating the Immigration and Nationality Act ("INA") and requesting release or the provision of a prompt individualized bond hearing.  (ECF No. 8-1.)  On April 14, 2026, U.S. District Judge Sheri Polster Chappell granted the petition and ordered Respondents to provide Petitioner with an individualized bond hearing before an immigration judge ("IJ") or release Petitioner under reasonable conditions of supervision.  (*Id.* at 4.)  In granting relief, Judge Chappell noted that because Petitioner is a noncitizen detained under 8 U.S.C. § 1226(a), he has the right to a bond hearing.  (*Id.* at 2.)  Judge Chappell explained:

> The [c]ourt will thus order the respondents to bring [Petitioner] before an immigration judge for an individualized bond hearing within ten days or release him.  To satisfy this [o]rder, the hearing must include—and the resulting order must reflect—consideration of evidence properly submitted by [Petitioner] and the factors announced in *In re Guerra*, 24 I.&N. Dec. 37 (BIA 2006), and [Petitioner's] counsel must be given at least 48 hours' notice of the hearing, but only if they enter their appearance in the Executive Office of Immigration Review's online filing system in time to receive the notice.  The [c]ourt is aware the EOIR is the agency that conducts bond hearings, it is not a party to this action, and it may decide not to hold a hearing that satisfies these requirements.  But, to

---

[2]    Petitioner is proceeding in this action in *pro se*.  Thus, his filings are entitled to liberal construction.  *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  Respondent does not contest Petitioner's recitation of the facts.  (*See generally* ECF No. 8.)

be clear, subjecting [Petitioner] to mandatory detention under § 1225(b)(2) is unlawful.  If the respondents are unable to ensure [Petitioner] receives a bond hearing that complies with this [o]rder within ten days, they must release him.

(*Id.* at 3.)  An IJ held a bond hearing on April 22, 2026, and denied Petitioner's request for release on bond upon finding that Petitioner "has not met his burden to show that he is not a danger or a flight risk."  (ECF No. 8-2 at 1.)

Petitioner was then transferred to the Golden State Annex Detention Facility in the Eastern District of California.  (ECF No. 1 at 6–7.)  On May 11, 2026, Petitioner filed the instant habeas petition and motion for TRO, claiming his detention violates the Due Process Clause.  (ECF No. 1 at 17–18; *see also* ECF No. 2.)  In this action, Petitioner seeks a hearing where Respondent bears the burden of establishing by clear and convincing evidence that Petitioner presents a risk of flight or danger and no alternatives to detention could mitigate such risk, or in the alternative, release.  (ECF No. 1 at 18.)  On May 12, 2026, the Court noted it intends to rule directly on the habeas petition and ordered Respondent to file a response.  (ECF No. 5.)  On May 15, 2026, Respondent filed an opposition to the petition.  (ECF No. 8.)

## II.    STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art I, § 9, cl. 2).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

///

### III.   ANALYSIS

In the instant habeas petition, Petitioner claims his detention violates the Fifth Amendment Due Process Clause.  (ECF No. 1 at 17–18.)  Respondent argues Petitioner has not provided new facts or changed circumstances in the second petition and therefore it should be dismissed.[3]  (ECF No. 8 at 1–2.)

The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law.  U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status.  *Zadvydas*, 533 U.S. at 693.  These due process rights extend to immigration proceedings and detention.  *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the

---

[3]   Respondent also argues that a claim presented in a second or successive habeas petition under 28 U.S.C. § 2254 that was presented in a prior application shall be dismissed.  (ECF No. 8 at 1–2.)  The Court rejects this argument for several reasons.  First, Petitioner's instant habeas petition is filed pursuant to 28 U.S.C. § 2241, not § 2254, and the Ninth Circuit has made clear that "§ 2244(a) cannot apply to a § 2241 petition filed by an [immigration] detainee[.]" *Barapind v. Reno*, 225 F.3d 1100, 1111 (9th Cir. 2000).  This is because "§ 2244(a) bars successive petitions seeking review of the propriety of a detention 'pursuant to a judgment of a court of the United States[,]'" and individuals like Petitioner who are in custody pending the outcome of their immigration proceedings are not detained "pursuant to a judgment of a court of the United States." *Id.* (quoting 28 U.S.C. § 2244(a)) (emphasis in original).  Second, the case law Respondent cites for this proposition is inapposite because Petitioner is seeking different relief from the relief Judge Chappell provided to him in the prior habeas action.  (ECF No. 8 at 1 (citing *Picrin-Peron v. Rison*, 930 F.2d 773, 776 (9th Cir. 1991) (finding that because petitioner only requested release from custody and had been released, the court could provide no further relief and the petition was properly dismissed); *Abdala v. INS*, 488 F.3d 1061, 1064–65 (9th Cir. 2007) (discussing and collecting cases in which a petitioner's release from detention, parole, or removal rendered a habeas petition moot); *Flores-Torres v. Mukasey*, 548 F.3d 708, 710 n.3 (9th Cir. 2008) (dismissing as moot a challenge to immigration detention without a hearing because the noncitizen had subsequently received a hearing)).)  Third, Petitioner specifically seeks (1) a hearing where Respondent bears the burden of establishing by clear and convincing evidence that Petitioner presents a risk of flight or danger and no alternatives to detention could mitigate such risk, or (2) in the alternative, release.  In comparison, the relief Petitioner was previously granted by Judge Chappell was limited to a bond hearing where the burden was on Petitioner to establish he is not a danger or a flight risk.

4

Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

A.   Liberty Interest

As for the first step, the Court finds Petitioner has established a protectable liberty interest.  *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause").  "[T]he government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]."  *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) (quoting *Morrissey*, 408 U.S. at 482) (modifications in original)).  "Accordingly, a noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody."  *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025).  To determine whether an individual's conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*."  *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept 9, 2025).

Here, the Court finds Petitioner has a clear liberty interest, particularly after he was released by immigration authorities in 2022.  (ECF No. 8-3 at 2.)  Under *Morrisey*, this release implied a promise that he would not be re-detained during the pendency of his immigration proceedings if he abided by the terms of his release.  Petitioner submits that he was pursuing his asylum claim and Respondent even notes that he has no prior criminal history.  (ECF No. 1 at 5–7; ECF No. 8-4 at 2.)  Respondent does not claim that Petitioner violated any conditions of his release.  As this Court has found previously, along with many other courts in this district when confronted with similar circumstances, Petitioner has a clear interest in his continued freedom as he awaits the outcome of his asylum proceedings.  *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d

1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

### B.    Procedures Required

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). As set forth below, the Court finds Respondent violated Petitioner's due process rights. The Court will address each of these factors in turn.

### i.    Private Interest

First, as explained above, Petitioner has a substantial private interest in remaining free from detention that is unquestionably affected by Respondent's actions in detaining him. "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Moreover, Respondents do not challenge Petitioner's private interest here. Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention. *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

### ii.    Risk of Erroneous Deprivation

Second, the risk of erroneous deprivation is considerable given that Petitioner was not afforded a pre-deprivation hearing to determine whether his detention complied with constitutional protections. Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest for his detention to comport with due process. *Zadvydas*, 533 U.S. at 690. While "[t]he government has legitimate interests in protecting the public and in ensuring that noncitizens in removal proceedings appear for hearings," Petitioner has received virtually no procedural safeguards to

ensure any detention is reasonably related to those purposes. *Hernandez*, 872 F.3d 976. Further, due process puts the burden on the Government to establish by clear and convincing evidence that a noncitizen is a flight risk or a danger to the community to justify denial of bond.[4] *Id.* at 983 n.8.

As an initial matter, Petitioner has been provided no process to ensure his detention is properly justified. There is no dispute Petitioner did not receive a pre-deprivation hearing. There is no evidence in the record that Petitioner was provided an individualized initial custody determination as required under 8 U.S.C. § 1226(a). Additionally, no process was made available for Petitioner to be heard for more than a month. Petitioner was detained on March 21, 2026, but he was not provided a bond hearing until he was forced to seek judicial relief and a federal court ordered Respondent to provide the bond hearing to which he was statutorily-entitled. Until Judge Chappell's order, the Government provided no process, pre- or post-deprivation.

Further, the post-deprivation § 1226(a) bond hearing as ordered by Judge Chappell did not ensure his detention was justified. All the IJ determined was that *Petitioner* did not demonstrate he is not a danger or flight risk, despite noting that Petitioner has "various immediate and extended family members and friends residing in the United States with immigration status, that he has worked in the United States, that he has not failed to appear for scheduled hearings and appointments in the past, and that he has identified a bond 'sponsor' to support him if released." (ECF No. 1 at 6; ECF Nos. 8-1; ECF No. 8-2 at 3.) Thus, the Court finds that in the absence of the processes (or lack thereof) provided before or after his detention, the risk that Petitioner is being erroneously deprived of his liberty is high. The probative value of such additional procedural safeguards, including notice and a constitutionally compliant due process hearing to determine whether Petitioner's civil detention is justified, is high. *R.D.T.M.*, 2025 WL 2617255, at *4.

///

---

[4]    District courts have routinely found the appropriate standard for post-deprivation bond hearings is for the Government to bear the burden of proving by clear and convincing evidence that the noncitizen's detention is necessary to prevent danger to the community or flight. *See, e.g.*, *Pinchi v. Noem*, 792 F. Supp. 3d 1025 (N.D. Cal. 2025); *Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767 (E.D. Cal. Aug. 28, 2025); *Caglar v. Wamsley, et al.*, No. 2:26-cv-00787-TMC, 2026 WL 1123515 (W.D. Wash. Apr. 24, 2026).

                            iii.        *Government's Interest*

Finally, while the Government has an interest in protecting the public and ensuring that noncitizens appear for hearings, Respondent does not claim either of these interests are advanced in Petitioner's detention. Respondent sets forth no basis for maintaining Petitioner's custody apart from the successive petition argument. As discussed above, there has been no finding that Petitioner does in fact affirmatively pose a danger or flight risk. Further, the Government has made no substantive argument as to whether Petitioner is a flight risk or danger. (*See* ECF No. 8.) Petitioner's release from immigration custody in 2022 would necessarily be based on his satisfactory demonstration that his release "would not pose a danger" and that he was "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). Petitioner appears to have complied with immigration requirements since his release, including filing an asylum application that is currently pending. Respondent does not identify their justification in reversing course to re-detain Petitioner without any changing circumstances. Moreover, Petitioner does not have a final order of removal and his appearance at future immigration proceedings could be reasonably ensured by bond or enrollment in supervision.

Further, the effort and cost required to provide Petitioner with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). Notice and custody determination hearings are routine processes for Respondent. Indeed, these are the very processes owed to Petitioner under 8 U.S.C. § 1226(a), which Judge Chappell found applies to him. (ECF No. 8-1.) Any delay in detention (if justified) for the time to provide notice and a hearing would be minimal. It would be less of a fiscal and administrative burden for the Government to return Petitioner home to await a determination on his asylum application than to continue to detain him. *See also Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T]he Ninth Circuit has recognized that the costs to the public of immigration detention are staggering.").

The Court finds that, each of the above factors weigh in Petitioner's favor and under these circumstances, Respondent was required to provide notice and a pre-deprivation hearing. The United States Supreme Court "usually has held that the Constitution requires some kind of a

8

hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). The Court describes post-deprivation remedies as the "special case" where those are "the only remedies the State could be expected to provide." *Id.* at 129. Here — where there is no final order of removal, no criminal history, and no individualized changed circumstances to justify re-detention — the Court finds pre-deprivation notice and a hearing are possible and valuable to preventing erroneous deprivation of liberty.

Yet, Respondent did not provide either notice nor a pre-deprivation hearing. Moreover, Respondent did not provide a post-deprivation bond hearing until more than a month after Petitioner's detention and only after court order. Petitioner's detention thus violates the Fifth Amendment Due Process Clause.

**IV.    CONCLUSION**

For the foregoing reasons, the Court GRANTS the Petition for Writ of Habeas Corpus. (ECF No. 1.) IT IS HEREBY ORDERED:

1.    **Within two (2) court days from the date of this Order**, Respondent shall file a notice certifying compliance with the Court's order that Petitioner Raul J.O. (A # 240-744-324) be immediately released from custody under the same conditions he was released prior to his current detention. At the time of release, Respondents must return all of Petitioner's documents and possessions;

2.    Respondent is ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where (a) Respondent shows material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondent demonstrates by clear and convincing evidence that the Government's interest in protecting the public and/or ensuring Petitioner appears at future immigration proceedings outweighs Petitioner's constitutionally protected interest in remaining free from detention. *See Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 990. At any such hearing, Petitioner shall be allowed to have counsel present;

3.    Petitioner's pending Motion for Temporary Restraining Order (ECF No. 2) and

Motion to Appoint Counsel (ECF No. 3) are DENIED as moot;

    4.    The Clerk of Court shall enter judgment in favor of Petitioner and close this case.

    IT IS SO ORDERED.

Date: May 28, 2026

_____

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE